MURDOCK, Justice
(concurring in the result in part and dissenting in part in case no. 1071020).
With respect to the appeal in case no. 1071020, I concur in the result reached by the main opinion except as to the fifth count of Wendy Baggett’s complaint, as to which I respectfully dissent. I write separately to address the third and fifth counts of the complaint.

The Third Count

In the first trial of this case, the third count of Baggett’s complaint alleged that Mobile OB-GYN had breached the standard of care because it “negligently did not have in place appropriate procedures, safeguards, and protocols to prevent the drug Benicar from being prescribed to pregnant patients.” Baggett adduced evidence during trial that, if believed by the jury, indicated that Dr. Madonia’s nurse did not know what Benicar was before Baggett’s baby was delivered; that the staff of Mobile OB-GYN did not ask patients, during every prenatal visit, what medications they were taking; that some Mobile OB-GYN staff erroneously believed that Dr. Mado-nia automatically discontinued all medications when a patient became pregnant; and that Dr. Madonia did not indicate on Baggett’s medical chart that he had allegedly discontinued Benicar. Further, although disputed, there was evidence from which the jury reasonably could find that Dr. Madonia himself did not ask Baggett on prenatal visits what medications she was taking and, as discussed in the main opinion, that neither Dr. Madonia nor his staff followed charting practices that would reveal this information.[8]
*1143 The extreme nature of the risk to pregnant patients of taking Benicar was not only testified to by experts, it was undisputed. Accordingly, if proven, the fact that Mobile OB-GYN did not have in place necessary procedures or practices for learning whether a pregnant patient was taking a drug as dangerous to a fetus as Benicar — and especially an appropriate procedure or practice to determine or reveal tvhether a pregnant patient teas still taking a drug recently prescribed by Dr. Madonia himself that woidd, be dangerous to a developing fetus — would entail a “ ‘ “lack of care [that] is so apparent ... as to be understood by a layman, and [to] require[ ] only common knowledge and experience to understand it.” ’ ” Ex parte HealthSouth Corp., 851 So.2d 33, 39 (Ala.2002) (quoting Tuscaloosa Orthopedic Appliance Co. v. Wyatt, 460 So.2d 156, 161 (Ala.1984), quoting in turn Dimoff v. Maitre, 432 So.2d 1225, 1226-27 (Ala.1983)). Likewise, as to the issue of causation, it is well within the ken of a layperson to be able to infer how appropriate charting practices would have made it apparent in a timely manner that Baggett remained on Benicar after she became pregnant.

The Fifth Count

I disagree, however, with the main opinion’s treatment of count five of the complaint. Baggett alleges in count five that Dr. Madonia “negligently did not properly evaluate the risk of allowing a pregnant patient to remain on the drug Benicar.” The record, however, at least as it developed at the first trial of this case, did not support such an allegation. In point of fact, there was no dispute at the first trial but that Dr. Madonia actually did know and did appreciate, at the time he was treating Baggett, the risk Benicar posed to fetuses. The dispute was not whether Dr. Madonia had this knowledge, but rather whether he acted upon it — either by implementing appropriate procedures to prevent patients like Baggett from remaining on such a drug or by actually informing Bag-gett that she should stop taking the drug. These are the issues to which the evidence at the first trial was directed — and these issues are subsumed by the first and third counts of the complaint. Accordingly, the charging of the jury as to the fifth count in the first trial of this case was at best potentially duplicative and confusing, see, e.g., American Cast Iron Pipe Co. v. Williams, 591 So.2d 854, 856 (Ala.1991), and 75A Am. Jur.2d Trial § 991 (2007), and was at worst the charging of a “bad count.”

. Consistent with expert testimony introduced by Baggett at trial, not to mention its ability to use its own common sense and experience, the jury could have found that such charting practices would include a practice of always charting both the prescription of and the dis *1143 continuation of drugs that posed a danger to pregnant women and a practice of checking for both types of entries with respect to patients who become pregnant.